IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Sharilyn and De'ja McGee,**

    **Plaintiff,**

v.                                                                                                 Case No. 22-2502-DDC

**Heartland Medical Clinic, Inc.**
**d/b/a Heartland Community Health Center**
**and Clare Kuhn,**

    **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiffs filed this lawsuit against defendants alleging race discrimination and retaliation under 42 U.S.C. § 1981. This matter is presently before the court on defendants' motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) (doc. 4). As explained below, the courts grants the motion in part and denies it in part.

**Standard**

The court will grant a motion to dismiss for failure to state a claim when a plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id*. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id*., and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*,

453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Background**

Consistent with the governing standard, the court accepts as true the following well-pleaded facts alleged in plaintiffs' Complaint.  Defendant Heartland Medical Clinic, Inc. d/b/a Heartland Community Health Center (hereinafter "Heartland") provides health care services to low- and no-income individuals in Lawrence, Kansas, and surrounding communities.  Plaintiff Sharilyn McGee and her adult daughter, plaintiff De'ja McGee, are among the vulnerable populations that Heartland seeks proactively to serve.  Both plaintiffs are African-American.[1]  Both plaintiffs received health care services at Heartland.  During the pertinent time period, defendant Clare Kuhn was employed as a nurse practitioner at Heartland.  Ms. Kuhn is Caucasian.

In January 2020, plaintiff Sharilyn McGee began serving as a foster parent to A.L., the natural daughter of Ms. McGee's niece.  During this time, plaintiff De'ja McGee lived with her mother and assisted in caring for A.L.  The parental rights of A.L.'s parents were terminated by court order and plaintiff Sharilyn McGee began the process of adopting A.L.  Toward that end, in October 2021, plaintiff Sharilyn McGee asked Heartland through Ms. Kuhn to complete an Adoption Health Statement.  This health statement is a standard form prepared by the Kansas Department of Children and Families and the State requires its use in connection with any adoption.  Briefly summarized, the form requires a licensed medical provider to indicate whether

---

[1] Plaintiffs use this term to describe their race, so the court adopts their convention.

the individual seeking to adopt has a physical or mental condition that would interfere with that individual's ability to care for the health, safety or welfare of the child. Defendant Clare Kuhn completed the form adversely to plaintiff, indicating that Sharilyn McGee had a physical or mental health condition that would interfere with her ability to care for A.L. Despite the fact that plaintiff De'ja McGee was not seeking to adopt A.L. and had not asked Heartland or Ms. Kuhn to complete a form on her behalf, Ms. Kuhn completed a separate Adoption Health Statement indicating that plaintiff De'ja McGee had a physical or mental health condition that would interfere with her ability to care for A.L. Contrary to the information provided by defendant Kuhn on the adoption forms, neither plaintiff has any health condition that would interfere with her ability to care for A.L. In fact, at the time plaintiff Sharilyn McGee asked Heartland to complete the adoption form, defendants knew that she, aided by plaintiff De'ja McGee, had successfully cared for A.L. for more than 18 months. Plaintiffs further allege that defendants knew when Ms. Kuhn signed the adoption health statements that plaintiff Sharilyn McGee had successfully raised plaintiff De'ja McGee, who had already obtained an associate's degree from a community college and was earning her bachelor's degree while maintaining employment.

When defendant Kuhn completed the Adoption Health Statement for plaintiff Sharilyn McGee, Sharilyn McGee's medical records (as maintained by Heartland) indicated that she had remained sober for nearly 24 years; that she had worked consistently to improve her mental health; that she sometimes experienced difficulty acquiring mental health services because of insurance coverage issues; that she was reluctant to take medications that would interfere with her ability to care for A.L.; that she sometimes experienced difficulty keeping her medical appointments because of her work schedule and responsibilities caring for A.L.; that she had experienced an

abusive relationship but had ended that relationship safely by becoming a resident at a domestic violence center for a time; that she had expressed more interest in life and enjoyed more energy since beginning to care for A.L.; and that she was highly attentive to plaintiff De'ja McGee's medical needs when De'ja McGee was a minor. Plaintiffs allege, then, that defendants knew when Ms. Kuhn completed the Adoption Heath Statement that plaintiff Sharilyn McGee did not have a health condition that would interfere with her ability to care for A.L.

Similarly, when defendant Kuhn completed the Adoption Health Statement with respect to plaintiff De'ja McGee, De'ja McGee's medical records as maintained by Heartland indicated that she was determined to succeed in school despite several obstacles; that she is ambitious, smart, loves her family, and helped care for A.L.; and that she had participated in training as a Court Appointed Special Advocate for children. Plaintiffs allege, then, that defendants knew when Ms. Kuhn completed the Adoption Heath Statement that plaintiff De'ja McGee didn't have a health condition that would interfere with her ability to care for A.L.

After Ms. Kuhn completed the Adoption Health Statements adversely to plaintiffs, plaintiff Sharilyn McGee requested an explanation from Ms. Kuhn. Ms. Kuhn refused to provide any explanation. When Caucasian friends intervened on plaintiffs' behalf, defendants finally agreed to meet with plaintiffs in February 2022. Plaintiffs' friends as well as members of A.L.'s care team[2] attended the meeting to attest to plaintiffs' health and abilities as caregivers. Despite the efforts of these third parties, defendants refused to change the Adoption Health Statements and,

---

[2] The Complaint indicates that A.L. has autism spectrum disorder and that plaintiff Sharilyn McGee successfully had arranged for multiple community services to assist in A.L.'s growth and development.

4

thereafter, took steps to avoid serving plaintiffs as patients of Heartland. Plaintiffs assert that Heartland refused numerous opportunities to correct information supplied on the forms. Plaintiffs assert in their Complaint that, but for plaintiffs' race, defendants would have completed the Adoption Health Statements differently and would have stated that neither plaintiff had a health condition that would interfere with her ability to care for a child.

Plaintiff Sharilyn McGee successfully completed the adoption of A.L. in June 2022. According to plaintiffs, adoption facilitators "recognized the error in Heartland's medical assessment" of Sharilyn McGee and accepted an Adoption Health Statement from a different health care provider, who indicated that plaintiff Sharilyn McGee did not have any physical or mental health condition that would interfere with her ability to care for A.L.

**Discussion**

Plaintiffs assert claims of race discrimination and retaliation pursuant to 42 U.S.C. § 1981. Section 1981 guarantees that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). The phrase "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). In their Complaint, plaintiffs allege that completion of an Adoption Health Statement is a benefit or privilege of the contractual relationship between Heartland as a provider of healthcare services and plaintiffs as patients of Heartland. Plaintiffs assert that defendants' assessment of plaintiffs when completing the Adoption Health Statements was racially discriminatory and interfered with plaintiffs' enjoyment of the benefit or privilege of obtaining a health assessment from their health care provider. In support of their retaliation

claims, plaintiffs assert that defendants refused to change the allegedly discriminatory assessments and took steps to avoid plaintiffs as patients after plaintiffs opposed the allegedly discriminatory health assessments.

Defendants move to dismiss all claims for failure to state a claim for relief. In addition, defendants ask the court to strike plaintiffs' allegations about the February 2022 meeting, arguing that including those allegations in the Complaint violates D. Kan. R. 16.3(i). As explained below, the court denies the motion with respect to plaintiffs' discrimination claims, grants the motion with respect to plaintiffs' retaliation claims (although the court grants plaintiffs leave to amend their retaliation claims), and denies defendants' request to strike allegations from the Complaint.

**Plaintiffs' Discrimination Claims**

To prevail on their § 1981 discrimination claims, plaintiffs must show: (1) membership in a protected class; (2) defendants intended to discriminate on the basis of race; and (3) the alleged discrimination interfered with a protected activity as defined in the statute (that is, making or enforcing a contract). *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (citing *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001)). Defendants move to dismiss these claims on the grounds that plaintiffs have failed to plead adequate facts plausibly showing the second and third elements.

*Discriminatory Intent*

The court begins with the argument that plaintiffs have failed to plead intentional race discrimination. According to defendants, plaintiffs' Complaint consists only of vague and

conclusory allegations that Ms. Kuhn treated white patients more favorably without specific facts to support a plausible inference that Ms. Kuhn intended to interfere with plaintiffs' contractual rights based on race.  The court agrees with defendants that many of plaintiffs' allegations about defendant Kuhn's more favorable treatment of white patients are vague and conclusory.  For that reason, the court has not included those allegations in the factual background set forth above.  Nonetheless, the Complaint's other allegations are more than adequate to provide the "context and detail" required by the Circuit to link defendants' allegedly discriminatory motive to the unfavorable completion of the Adoption Health Statements.  *See Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019) (While the controlling law doesn't "mandate the pleading of any specific facts in particular, a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation.") (quotation cleaned up).

Plaintiffs' Complaint contains specific facts about their physical and mental health histories and their life experiences—facts that they allege were known to defendants when Ms. Kuhn completed the Adoption Health Statement—that, according to plaintiffs, demonstrate that plaintiffs had the ability to care for A.L.  Plaintiffs allege, for example, defendants knew that plaintiff Sharilyn McGee successfully had cared for A.L. for more than 18 months; successfully had raised plaintiff De'ja McGee; had remained sober for nearly 24 years; prioritized A.L.'s needs; and had expressed more interest in life and enjoyed more energy since beginning to care for A.L.  Plaintiffs allege that defendants knew that plaintiff De'ja McGee had performed successfully in school and successfully had helped care for A.L. for 18 months.  According to plaintiffs, these facts are contrary to any reasonable conclusion that plaintiffs had a physical or

mental health condition that would interfere with their ability to care for A.L. Plaintiffs further allege that defendants unilaterally completed a form about plaintiff De'ja McGee when they were not asked to do so and then refused to provide any explanation for the manner in which they completed the Adoption Health Statements. All of these facts, taken together, permit a plausible inference that defendants discriminated against plaintiffs based on race. *Id*. at 1275 ("A plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face.") (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (quotation cleaned up). And, more importantly, these facts permit a plausible inference that defendants would have completed the Adoption Health Statements differently but for plaintiffs' race. Nothing more is required under the law. *See Comcast Corp. v. Nat'l Ass'n of African-American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (a plaintiff must plead plausibly that, but for race, it would not have suffered the loss of a legally protected right).

*Interference with Contractual Right*

Defendants also move the court to dismiss plaintiffs' discrimination claims on the ground that plaintiffs have failed to plead interference with a contractual right. Defendants urge that plaintiffs can identify no contract that required defendants to complete the Adoption Health Statement. As argued by defendants, the language of the form itself did not require completion by a current healthcare provider of the prospective adoptive parent and, because the purpose of

form related only to the adoption process and not plaintiffs' health care, defendants had no obligation to complete it.[3]

In their Complaint, plaintiffs have pleaded that they were established patients of Heartland and that defendants' completion of Adoption Health Statements falls within the ambit of the contractual relationship that Heartland has with its patients, or, at the least, is a benefit or privilege of that contractual relationship. They further allege that defendants not only completed the form when asked by plaintiff Sharilyn McGee, but also completed a form for plaintiff De'ja McGee without anyone asking them to do so. These additional facts support plaintiffs' theory that completing such forms falls within the ambit of the contractual relationship between Heartland and its patients or is a benefit of that contractual relationship.[4]

Defendants also argue that they were not required to complete the Adoption Health Statements and did so only as an accommodation to plaintiffs. Defendants ultimately may prevail on this point. But for purposes of pleading their claims, plaintiffs have alleged plausibly that defendants were required to complete the forms as part of the provider-patient relationship. In the

---

[3] Defendants appear to suggest that plaintiffs' claims must fail because there is no written language on any document imposing an obligation on defendants to complete the Adoption Health Statement. But plaintiffs may prevail on their claims even if no writing obligated defendants to complete the forms. *See Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276 (10th Cir. 2007) (reversing district court's dismissal of § 1981 claim where plaintiff, who was not an account holder at the bank, entered bank seeking to exchange a large-denomination bill for smaller-denomination bills).

[4] In the alternative, plaintiffs assert that the facts alleged in the Complaint plausibly support the theory that completing the Adoption Health Statement was itself an option or unilateral contract consistent with Restatement (Second) of Contracts § 45. Defendants, in reply, contend only that any contract under those circumstances would fail for lack of consideration. That argument is better suited for summary judgment.

alternative, defendants assert that even if they were obligated to complete the forms as part of their contractual relationship with plaintiffs, they satisfied that obligation by completing the forms and certainly were not obligated to complete the forms favorably to plaintiffs.  The essence of plaintiffs' claims, however, is not that they were entitled to have defendants complete the forms favorably to plaintiffs, but that they were entitled to have defendants complete the forms without regard to plaintiffs' race.

In support of their motion, defendants rely heavily on *Smith v. University of Minnesota Medical Center*, No. CIV.09-293 JRT JSM, 2010 WL 3893902, at *1–2 (D. Minn. July 14, 2010), *report and recommendation adopted*, No. CIV.09-0293 JRT JSM, 2010 WL 3893849 (D. Minn. Sept. 30, 2010).  In that case, the plaintiff checked himself into the hospital for treatment of his major depression and PTSD. *Id*. at *1.  Shortly into plaintiff's stay, he asked the doctor who was treating him to write a letter to a federal judge excusing plaintiff from attending a deposition based on his hospitalization. *Id*. at *2. The doctor refused to do so. *Id*.  Later, the doctor provided plaintiff with a generic letter that was not satisfactory to plaintiff. *Id*.  Plaintiff sued the hospital and the doctor for (among a host of other theories and based on numerous other allegations not pertinent here) racial discrimination under § 1981. *Id*. at *4.  The magistrate judge recommended dismissal of the pro se plaintiff's § 1981 claim because plaintiff hadn't alleged any racially discriminatory conduct by either defendant and because plaintiff had failed to identify a contract or prospective contract that defendants impaired. *Id.* at *11.  The district judge adopted that recommendation. *Smith v. Univ. of Minn. Med. Ctr.*, No. CIV.09-0293 JRT JSM, 2010 WL 3893849 (D. Minn. Sept. 30, 2010).

The *Smith* opinion is not persuasive to the court. To begin, it is not at all clear from the opinion whether plaintiff's § 1981 claim was even based on the doctor's refusal to write a letter to the judge or the unsatisfactory letter he ultimately wrote. Thus, while defendants argue that *Smith* stands for the principle that a healthcare provider need not fulfill every request a patient makes, that argument vastly overstates *Smith*'s holding. The court is similarly unpersuaded by defendants' contention that the requested letter in *Smith* is factually analogous to the Adoption Health statement in this case. According to defendants, both documents fall well outside the realm of the provider/patient relationship and have nothing to do with a patient's health care and treatment. Plaintiffs here, however, plausibly have alleged that plaintiffs' physical and mental health was the sole focus of the Adoption Health Statement and that defendants' personal knowledge of plaintiffs' health placed them in a unique position to complete the forms. Finally, it is clear from a reading of *Smith* that the pro se plaintiff's complaint was devoid of any specific facts plausibly showing race-based conduct on the part of defendant or showing any contractual relationship with which defendants allegedly had interfered. By contrast, and as explained above, plaintiffs' Complaint here contains detailed allegations sufficient to support their § 1981 claims.

For the foregoing reasons, the court concludes that plaintiffs' Complaint plausibly alleges that defendants' alleged conduct interfered with plaintiffs' contractual rights within the meaning of § 1981. This aspect of defendants' motion to dismiss is denied.

**Plaintiffs' Retaliation Claims**

Defendants next move to dismiss plaintiffs' § 1981 retaliation claims. As an initial matter, defendants assert that the court must dismiss these claims because defense counsel has not located

11

any decision from "this Court or any Kansas case" recognizing a § 1981 retaliation claim outside the employment context. But that isn't the controlling question. The pertinent question is whether the Supreme Court or the Tenth Circuit has recognized a § 1981 retaliation claim outside the employment context. And the Tenth Circuit, without any apparent hesitation, has done so. *See Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1226 (10th Cir. 2017) (reversing grant of summary judgment against the plaintiff-subcontractor's § 1981 retaliation claim against primary contractor on construction project); *see also Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. Appx. 411, 414 (10th Cir. 2014) (applying elements of § 1981 retaliation claim to homeowner's claim against homeowners' association). Moreover, while one Circuit has referred to non-employment retaliation claims under § 1981 as "exceedingly rare," *see Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015), defendants haven't directed the court to any case that has declined to recognize such claims. Nor has the court's own research located any cases declining to recognize a § 1981 retaliation claim outside the employment context. The court, then, denies this aspect of the motion to dismiss.[5]

To prevail on their § 1981 retaliation claims, plaintiffs must show: (1) they engaged in opposition to racial discrimination that is protected under the statute; (2) a reasonable person would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. *See Parker Excavating*, 863 F.3d at 1220. Defendants contend that dismissal is required because the Complaint hasn't identified any

---

[5] Defendants also insist that the "plain language" of § 1981 "dooms" plaintiffs' retaliation claim because it prohibits only discrimination and does not refer to retaliation. The Supreme Court has flatly rejected this argument. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452 (2008) (the language of § 1981 encompasses a claim for retaliation).

protected activity that occurred before defendants' completion of the Adoption Health Statement. But defendants have misapprehended the nature of plaintiffs' retaliation claims. Under plaintiffs' retaliation theory, as plainly articulated in the Complaint, the challenged action isn't the initial completion of the Adoption Health Statement. Instead, plaintiffs claim that defendants retaliated by refusing to change their conclusion on the Statements (and by taking steps to avoid serving plaintiffs as patients) after the February 2022 meeting where plaintiffs complained about the unfavorable health assessments. Contrary to defendants' argument, then, dismissal is not required simply because plaintiffs have not identified a protected activity occurring before defendants' completion of the forms.

Still, plaintiffs' Complaint does not plausibly allege that they engaged in protected activity during the February 2022 meeting. In paragraphs 54 and 55 of their Complaint, plaintiffs describe the February 2022 meeting with defendants but absent from these paragraphs is any allegation that plaintiffs told defendants that they believed that defendants' unfavorable completion of the forms was based on race. Those paragraphs suggest that the meeting was focused solely on plaintiffs' physical and mental health and their abilities to provide care to A.L. In paragraph 63, plaintiffs allege that defendants retaliated against them after "plaintiffs vehemently opposed the discriminatory health assessments." But it is not at all clear from that allegation whether plaintiffs in fact complained or articulated to defendants that the forms were racially discriminatory. Of course, a complaint that defendants' health assessments were inaccurate or unfair, without more, is not a complaint about race discrimination for purposes of engaging in protected activity under the statute. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (to satisfy the "protected activity" prong, plaintiff must convey to defendant the concern that defendant has

engaged in a practice made unlawful by the pertinent statute; general complaints do not suffice). The court, then, dismisses plaintiffs' retaliation claims for failure to state a claim for relief. To the extent plaintiffs are able to cure this deficiency, the court will provide them an opportunity to file an amended complaint on or before July 28, 2023.[6]

**References to February 2022 Meeting**

Lastly, defendants ask the court to strike from the Complaint plaintiffs' references to the February 2022 meeting between plaintiffs, their friends, members of A.L.'s care team, and Heartland's management on the grounds that those references violate D. Kan. R. 16.3(i). This request is denied. Our Local Rule 16.3(i) governs "confidentiality concerns arising from court-ordered mediation" in cases pending in this District. *Rios v. Ramage*, No. 19-2602-JWB-ADM, 2020 WL 6701206, at *5 (D. Kan. Nov. 13, 2020). The meeting described in the Complaint occurred months before this lawsuit was filed and, quite evidently, the court did not order that "mediation." While defendants argue that the purpose of the meeting was to engage in "settlement discussions" such that the policy rationale of Local Rule 16.3(i) nonetheless applies, the allegations in the Complaint do not suggest that the parties were trying to settle claims in February 2022. Rather, the allegations in the Complaint suggest that plaintiffs wanted to meet with defendants to persuade them that Sharilyn McGee was physically and mentally able to care for A.L. and urge defendants to change their response to the Adoption Health Statement. Defendants

---

[6] Defendants have not challenged whether plaintiffs plausibly have alleged that defendants' refusal to change the forms and efforts to avoid them as patients constitute materially adverse actions.

14

direct the court to no authority indicating that the policy underlying Local Rule 16.3(i) warrants protecting from disclosure the allegations about the February 2022 meeting.

Defendants also suggest—albeit for the first time in their Reply Brief—that Federal Rule of Evidence 408 prohibits the references in the Complaint. Federal Rule of Evidence 408 governs the admissibility of compromise offers and negotiations in federal court and bars admissibility "to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or a contradiction." Fed. R. Evid. 408. At this early juncture, plaintiffs are not seeking to admit any evidence of the February 2022 meeting, let alone evidence to prove a claim's validity. An analysis of whether evidence of the February 2022 meeting implicates Rule 408 is better suited for a motion in limine or one seeking summary judgment. *See John Michael Assocs., Inc. v. BlueStem Mgmt. Advisors LLC*, No. 22-2055-HLT-RES, 2022 WL 1184447, at *3 (D. Kan. Apr. 21, 2022) (collecting opinions reasoning that Rule 12(f) was not designed to allow parties to obtain advance rulings on the admissibility of evidence). The court rejects this argument.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. 4) is granted in part and denied in part. The court grants the motion with respect to plaintiffs' retaliation claims, although the court grants plaintiffs leave to amend those claims on or before July 28, 2023. The court denies the motion in all other respects.

**IT IS SO ORDERED.**

Dated this 19th day of July, 2023, at Kansas City, Kansas.

s/Daniel D. Crabtree
DANIEL D. CRABTREE
United States District Judge

Dated this 19th day of July, 2023, at Kansas City, Kansas.

s/Daniel D. Crabtree
DANIEL D. CRABTREE
United States District Judge